IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHEP USA,<br><br>    Plaintiff,<br><br>v.<br><br>HIPACKING CORP.,<br>and DOES 1 through 10, inclusive,<br><br>    Defendant. | Case No.: 5:23-cv-1071-SSS(SPx) |

## STIPULATED JUDGMENT AND PERMANENT INJUNCTION

UPON CONSIDERATION of the Settlement Agreement entered into between the Parties, Plaintiff CHEP USA ("CHEP"), and Defendant HIPACKING CORP. ("Defendant"), it is this 15th day of January 2025, STIPULATED by the Parties and ORDERED THAT:

1. The Parties have entered the Settlement Agreement attached hereto as **Exhibit A**, which Settlement Agreement is approved by this Court and incorporated into this Stipulated Judgment as an order of this Court.

2. Defendant and HiPacking Corp.'s owners, officers, directors, and employees are hereby permanently enjoined from any purchase, sale, use, destruction, dismantling, or otherwise treatment or use of CHEP Pallets inconsistent with the Settlement Agreement attached hereto as **Exhibit A**.

3. This Stipulated Judgment shall bind all successors and assigns of the Parties.

4. Each party shall bear its own attorneys' fees and costs incurred in this Civil Action. Any future award of attorneys' fees and costs shall be awarded pursuant to the Settlement Agreement or applicable law.

79601751;1

5.      This Court retains jurisdiction over this matter for the purposes of administration and enforcement of this Stipulated Judgment and the Parties' Settlement Agreement.

**STIPULATED TO**:

**CHEP USA**

By: _____
    Name: Mario Birsa
    Title: National Mgr. Asset Protection & Security

**HIPACKING CORP.**

By: _____
Name: Elain Liu
Title: CFO

**SO ORDERED:**

Dated: January 30, 2025

_____
SUNSHINE S. SYKES
U.S. DISTRICT JUDGE

79601751;1

# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

**This Settlement Agreement and Release of Claims** (this "Settlement Agreement") is made and entered into as of January 15, 2025 (the "Effective Date") by, between, and among **HiPacking Corporation.** ("Company") and **CHEP USA** ("CHEP").

## RECITALS

**WHEREAS**, CHEP filed a civil action against Company captioned *CHEP USA v. HiPacking Corp. and DOES 1 through 10, inclusive,* Civil Action No. 5:23-cv-1071-SSS(SPx) in the United States District Court for the Central District of California (the "Civil Action") on June 5, 2023 alleging, among other things, conversion and, without limitation, seeking relief in the form of declaratory judgment, injunctive relief, and damages[1]; and

**WHEREAS**, on July 31, 2024, the Company filed its Answer in the Civil Action denying the allegations and pleading its separate affirmative defenses; and

**WHEREAS**, CHEP alleged in its Complaint that it operates an equipment pooling business, consisting in part of leasing to third parties equipment owned by CHEP, including wooden block pallets ("CHEP Pallets"), for carrying, supporting, or handling goods; and

**WHEREAS,** A description of CHEP Pallets is attached as **Exhibit A**; and

**WHEREAS,** CHEP alleges in its Complaint that it never sells or transfers ownership of CHEP Pallets, and no party is entitled to purchase, sell, use, or dispose of CHEP Pallets in any way that is inconsistent with CHEP's ownership rights; and

**WHEREAS,** CHEP alleges in its Complaint that over time, Company has possessed and used thousands of CHEP Pallets; and  CHEP visited the Company's location, commonly known as, 14144 Santa Ana Avenue, Fontana, California 92337 ("Company Facility");and during that visit, the CHEP representatives counted approximately 3,000 CHEP pallets; and

**WHEREAS**, CHEP alleges in its Complaint that that Company has no contractual or other business relationship with CHEP and should never be in possession of any CHEP pallets; and

**WHEREAS**, on November 4, 2024, the parties appeared for a settlement conference before The Honorable Magistrate Judge Sheri Pym, entered into a settlement agreement and placed the material terms of their agreement on the record in the Civil Action; and

**WHEREAS,** at the time the parties placed the material terms of their settlement on the record, the Company was in possession of approximately 409 pallets allegedly owned by CHEP pallets; and

---

[1] The Civil Action was originally assigned to case number 2:23-cv-04400, but on June 7, 2023, the Court reassigned the Civil Action to 5:23-cv-1071-SSS(SPx).

-1-

**WHEREAS**, on November 19, 2024, CHEP recovered the aforementioned approximately 409 pallets allegedly owned by CHEP in the Company's possession and conducted an inspection of the Company's Facility pursuant to the parties' settlement terms and agreement placed on the record and memorialized herein; and

**WHEREAS**, the parties hereto wish to enter into this Settlement Agreement to fully and finally resolve the disputes addressed in the Civil Action; and

**NOW, THEREFORE**, for and in consideration of the mutual covenants and benefits contained herein and for other good and valuable consideration exchanged by and between the parties hereto, which consideration each party acknowledges to be sufficient, just, and adequate, the parties hereby covenant and agree as follows:

    1.    <u>Incorporation</u>. The recitals set forth above are incorporated herein as though set forth fully herein.

    2.    <u>Settlement Payments and Pallet Recovery</u>. Within thirty (30) calendar days after the Effective Date, the Company shall (i) allow CHEP to pick up the CHEP Pallets currently located at the Company Facility ("Initial CHEP Pallet <u>Recovery</u>") with no compensation from CHEP to Company, and (ii) deliver and pay to CHEP fifteen thousand dollars ($15,000.00 USD) (the "Amount Owed").

Payment shall made payable to CHEP USA and be delivered to Samual A. Miller, Esq., Akerman LLP, 420 South Orange Avenue, Suite 1200, Orlando, Florida 32801.

    3.    <u>Release by CHEP.</u>  CHEP hereby releases, acquits, and forever discharges Company as well as the Company's officers, directors, members, shareholders, owners, employees, and agents from any and all claims, actions, causes of action, demands, damages, losses, liabilities, obligations, costs, expenses (including reasonable attorneys' fees) and compensation whatsoever, to the extent relating to or arising in connection with the allegations, claims, or defenses asserted in the Civil Action, whether now existing or hereafter arising, known or unknown, from the beginning of time up to and including the Effective Date.  This Release does not cover or apply to any rights, duties, or obligations in this Settlement Agreement.

    4.    <u>Release by Company.</u> Company hereby releases, acquits, and forever discharges CHEP and CHEP's partners, affiliates, employees, agents, officers, and directors from any and all claims, actions, causes of action, demands, damages, losses, liabilities, obligations, costs, expenses (including reasonable attorneys' fees) and compensation whatsoever, to the extent relating to or arising in connection with the allegations, claims, or defenses asserted in the Civil Action, whether now existing or hereafter arising, known or unknown, from the beginning of time up to and including the Effective Date.  This Release does not cover or apply to any rights, duties, or obligations in this Settlement Agreement.

    5.    <u>Invocation of Cal. Civ. Code § 1542</u>.  The Parties agree that they will not invoke the benefits of <u>California Civil Code Section 1542</u> or any other federal, state or local statutory rights

or rules or principles of common law or equity similar to Section 1542 in order to assert any claims released under this Agreement.

Section 1542 provides as follows:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH DEBTOR OR RELEASED PARTY."

6.  <u>Time is of the Essence</u>.  The parties to this Settlement Agreement agree that time is of the essence with respect to performance of each of the parties' obligations under this Settlement Agreement.

7.  <u>Ownership; Sale of CHEP Pallets.</u>  Company acknowledges CHEP's sole and exclusive ownership rights in all CHEP Pallets at all times.  Company agrees not to purchase or sell; offer to purchase or sell; trade; exchange; repair; destroy; dismantle; use; or paint CHEP Pallets, or do anything else inconsistent with CHEP's ownership rights.  In the event Company breaches this Section of this Settlement Agreement, CHEP may seek recourse, relief and damages in equity or at law in addition to and without waiving any equitable rights arising from any judgment or injunction entered in the Civil Action.

8.  <u>Civil Action</u>.  Within seven (7) calendar days after the Initial Pallet Recovery and payment of the Amount Owed, whichever is later, CHEP and Company will file a Stipulated Judgment (a form of which is attached as **Exhibit B**) requesting (i) court approval of this settlement, (ii) an injunction against Company enjoining any future purchase, sale, destruction, dismantling, or otherwise, treatment or use of CHEP Pallets inconsistent with CHEP's ownership rights; and (iii) continuing court jurisdiction to enforce the terms of this Settlement Agreement. Within three (3) calendar days of the court's entry of the Stipulated Judgment, the parties shall file a stipulation of dismissal of all claims against Company in the Civil Action and with each CHEP and Company to bear their own respective attorneys' fees and costs.

9.  <u>Reporting of Further CHEP Pallets</u>.  If Company purchases or otherwise receives CHEP Pallets from any person or entity following the Effective Date, Company shall promptly (i) notify CHEP (Mario.Birsa@chep.com, or other representative as may be identified from time to time by CHEP) of the number of such CHEP Pallets and the identity of the third party that delivered such CHEP Pallets to Company; and (ii) segregate and stack such CHEP Pallets and provide CHEP, CHEP's representatives, and CHEP's equipment with access to the CHEP Pallets for retrieval at a mutually agreeable time as provided in this Settlement Agreement.  Company expressly agrees that Company will not load emptied CHEP Pallets for continued use by Company, and acknowledge that knowingly doing so would be a material breach of this Settlement Agreement.

In the event that CHEP Pallets are received by the Company under load, CHEP shall permit

-3-

71717839;3

the Company a reasonable amount of time to unload the CHEP Pallet and segregate it in accordance with requirements set forth in this section.

The foregoing shall be without compensation from CHEP to Company.

10. <u>CHEP Pallet Condition</u>.  The obligations in this Settlement Agreement to allow the recovery of any CHEP Pallets by CHEP apply regardless of the condition of the CHEP Pallets.  If Company is unable to determine with reasonable certainty whether a pallet is a CHEP Pallet based on color, markings, and/or condition, Company shall promptly contact CHEP (Mario.Birsa@chep.com) in order to arrange a visit by a local CHEP representative.

11. <u>Inspection and Access to Premises</u>. Once every other calendar month, Company agrees to allow CHEP reasonable access to the Company Facility and any and all of its facilities, upon at least 24-hour advance notice via phone or email to:

>Yan Liu
>yan.liu@hipacking.com
>(404) 400-9153

><u>With a Copy of Notice to Company's Attorney:</u>

>Christian R. Oehm, Esq.
>Lindgren Lindgren Oehm & You, LLP
>christian@lloylaw.com
>732-243-9934

during Company's normal business hours in order to monitor compliance with this Settlement Agreement and to determine the amount of CHEP Pallets that may be in Company's possession at such time.  Reasonable access shall include, but is not limited to, access to warehouse space, trailers, and shipping containers.  Company warrants and represents that Company's only facility and operation is at 14144 Santa Ana Avenue, Fontana, California.  This inspection and access provision expires after five (5) years after the Effective Date.

12. <u>Identification of CHEP Pallet Source</u>.  Within five (5) business days after the Effective Date, Company shall produce copies of all invoices, canceled checks, and any other related documents (collectively, "Invoices") pursuant to which Company purchased, received, or otherwise came into possession of any pallets from Sosa Pallets and/or Captain Pallets.  At the same time, Company shall also provide a written, sworn Declaration from an authorized officer of Company authenticating those Invoices and confirming the accuracy of the information (including the source of the pallets, number of pallets transferred, and price paid) contained in those Invoices. Company shall, to the extent not apparent on the face of the Invoices, Company in the Declaration shall employ good faith and reasonable efforts and also identify the name(s) and address(es) of all individuals and/or entities that sold, transferred, or otherwise made available CHEP Pallets to Company.  Further, to the extent that the Invoices do not specifically

identify CHEP Pallets as the pallets being transferred (for example, if the Invoice just say "pallets"), Company's aforementioned Declaration shall employ good faith and reasonable efforts to confirm whether the pallets transferred, or any portion thereof, were CHEP pallets. Additionally, Company agrees to provide an authorized officer at CHEP's request to testify in a deposition, court proceeding, or other related matter, regarding all of the information identified in this Paragraph in the matter *CHEP USA vs. SOSA PALLETS, et al.* (Case No. 5:24–cv–00577–KK–DTB) (the "Sosa Civil Action"). Company agrees that CHEP may ask the authorized officer to testify on more than one (1) occasion as to the information identified in this Paragraph.

       13.    <u>Integration</u>. This Settlement Agreement constitutes the entire understanding and agreement between the Parties with respect to the settlement, cancels all previous oral and written negotiations, commitments, and writings in connection therewith, and can only be modified by a writing signed by all of the parties.

       14.    <u>Agreement in Compromise</u>. This Settlement Agreement constitutes a compromise of disputed claims, and nothing in the Settlement Agreement shall be construed as an admission by the parties. By entering into this Settlement Agreement, no party acquiesces in any contention made by any other party except as otherwise expressed herein this Settlement Agreement.

       15.    <u>Enforceability of this Settlement Agreement</u>. If any provision of this Settlement Agreement is held to be illegal, void, or unenforceable, such provision shall be of no force or effect. However, the illegality or unenforceability of such provision shall have no effect upon, and shall not impair the legality or enforceability of any other provision of this Settlement Agreement. Notwithstanding the foregoing, upon any finding by any court of competent jurisdiction that any release provided for herein is illegal, void or unenforceable, the parties agree, promptly upon the request of the other party hereto, to execute a release that is legal and enforceable.

       16.    <u>Construction</u>. For purposes of construction, this Settlement Agreement shall be deemed to have been jointly drafted by the respective parties and their counsel, and the rule of construction of contracts that ambiguities are construed against the drafting party shall not be applied against any person.

       17.    <u>Authority</u>. Each of the parties and signatories to this Settlement Agreement represents and warrants to each other party hereto that such party or signatory has full power, authority and legal right and has obtained all of the approvals and consents necessary, to execute, deliver and perform all actions required under this Settlement Agreement.

       18.    <u>Binding Effect</u>. This Settlement Agreement shall be binding upon and inure to the benefit of the respective predecessors, successors, heirs, and assigns or estates of each of the parties hereto and each past, present, direct, and indirect subsidiary, parent, and affiliated entity of each of the parties hereto and each past and present employee, agent, officer, director, stockholder, or other representative of each of the parties hereto and any other person, firm, or corporation now, previously, or hereafter affiliated, in any manner, with the parties hereto.

19. <u>Representations and Warranties</u>. Each of the parties hereto represents and warrants that it has carefully read this agreement in its entirety; that it has had an adequate opportunity to consider it and to consult with any advisor of its choice about it; that it understands all of its terms; that it has consulted with independent counsel of its choice, who answered to its satisfaction all questions that it had regarding this agreement; that its undersigned representative is duly authorized to enter into this agreement on its behalf; that it voluntarily assents to all the terms and conditions contained herein; that by signing this agreement it is bound by the terms and conditions contained herein; and that it is signing this agreement voluntarily and of its own free will.

20. <u>Governing Law and Jurisdiction</u>. The parties mutually acknowledge and agree that this agreement shall be construed and enforced in accordance with the laws of the State of California, without regard to the internal law of California regarding conflicts of law. The parties mutually consent and submit to the jurisdiction of the court where the Civil Action is currently pending. If any proceedings are instituted for the purpose of enforcing or interpreting any of the provisions of this Settlement Agreement, including pre-suit proceedings, and litigation, the prevailing Party is entitled to recover all of the prevailing Party's reasonable attorneys' fees and all costs and expenses incurred in connection with all enforcement proceedings at the trial level, all appellate proceedings, bankruptcy proceedings, and in enforcing any resulting judgment.

21. <u>Cooperation of the Parties</u>.  The Parties shall cooperate to accomplish the purpose of this Settlement Agreement, to execute this Settlement Agreement, and to execute any supplementary documents and to take all additional actions not inconsistent with the terms of this Settlement Agreement that are necessary and appropriate to give full force and effect to the terms and intent of this Settlement Agreement.

22. <u>Counterparts</u>.  The Parties may sign this Settlement Agreement in counterparts, all of which together will constitute one document. This Settlement Agreement will be considered signed when an original signature, an image of a handwritten signature, or a digitally captured signature is delivered by mail, courier, fax, electronically, or as an attachment to an email.  Fax, scanned, and digitally captured signatures are to be deemed as original signatures.

23. <u>Translation and Interpretation.</u>  For the convenience of the parties, one or more Chinese Mandarin translations of this Agreement may be prepared.  Each party represents that they have been afforded an opportunity to have this document translated and explained to them in Chinese Mandarin.  Notwithstanding the preparation or existence of any such Chinese Mandarin translations, the English language version of this Agreement shall be controlling.

**[PURPOSELY LEFT BLANK]**
**[SIGNATURES TO FOLLOW]**

In witness whereof, and intending to be legally bound hereby, the parties have executed this agreement as of the Effective Date.

**HIPACKING, CORP.**

By: _Elain Liu_
Name: Elian Liu
Title: CFO

**CHEP USA**

By: _Mario Birsa_
Name: Mario Birsa
Title: National Mgr. Asset Protection & Security

-7-

71717839;3

**EXHIBIT A**






# Pooled Wood Block Pallet
## North American Standard (48 x 40 inches)

### Overview

This industry standard quality wooden platform is ideal for the transport of goods in many industries including Fast Moving Consumer Goods, Beverage, Produce, Hardware, and Automotive industries.

Its 4-way entry design offers greater efficiencies during transport and storage.

### Features and Benefits

**Innovative Design**
- True 4-way entry ensures compatibility with all standard pallet jacks and forklifts
- Provides greater efficiency in pallet loading and unloading
- Free Span racking in either direction

**Consistent Specification**
- Suitable for automated production and warehousing facilities, increasing operational efficiency

**Consistent Availability**
- Ensures no delay in production at times of seasonal or unexpected demand

**Robust Construction - Full Perimeter Base**
- Provides strength for safe handling of heavy loads
- Evenly distributes load to reduce product damage
- Provides stability in block stacking
- Design eliminates notched stringers

**Environmentally Sound**
- Made from 100% reuseable or recycled materials

### Specifications

**Dimensions - in inches**

| | Length | Width | Height |
|---|---|---|---|
| | 48 | 40 | 5.6 |

**Window / Pallet entry - in inches**

| | Width | Height |
|---|---|---|
| 48 in side | 14.6 | 3.5 |
| 40 in side | 12.5 | 4.2 |

**Configuration and Stacking**
- Block stacked up to 5 unit loads high, not to exceed 10,000 lbs
- Empty pallets can be (stacked) stored 19 high in a trailer

### Notes

**Materials**

Wood: quality timber from a controlled selection of different wood types, primarily kiln-dried Southern Yellow Pine

Paint: water based

Nails: either standard or stiff stock wire

**Handling**
- Maximise the use of the pallet surface
- Minimise lifting from the undersides of the skids
- Rack the pallets under the outside blocks

**Performance and Standards**

A general purpose pallet that can be safely used for most applications in the distribution and transport chain. The CHEP Block Pallet has been designed using the Pallet Design System to carry 2,800 lbs in normal operating circumstances with a uniformly distributed load.

FM Approval applies to wood pallets that utilize composite wood blocks produced after December 30, 2008

**Truck Load Quantity**

570 pallets

CHEP.com

CHEP Pallecon Solutions
Suite 100
37564 Amrhein Road
Livonia, MI 48150
USA
Tel: 1 888 873 2277

CHEP USA
5897 Windward Parkway
Alpharetta, GA 30005
USA
Toll Free: + 1 800 370 2437
Tel: +1 407 370 2437
Fax: +1 407 355 6211

Property of CHEP. All equipment is rented under CHEP standard terms and conditions, which are available at 8517 South Park Circle, Orlando, FL 32819. All CHEP equipment remains the exclusive property of CHEP at all times.